UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

JOHN LEWIS,                                )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )        4:09-cv-76-SEB-WGH
                                           )
THOMAS McCRACKEN, JIM BENNETT, and         )
FRENCH LICK RESORT CASINO,                 )
                                           )
                    Defendants.            )


**ENTRY ON VARIOUS MOTIONS**

**<u>Introduction</u>**

      This matter is before the Court on the Motion for Summary Judgment filed by

defendants, J. Michael Bennett and French Lick Resorts & Casino, LLC, on May 4, 2010,

(Docket Nos. 38-39); defendant Thomas McCracken's Joinder in Motion for Summary

Judgment filed May 4, 2010, (Docket No. 40); and Plaintiff John Lewis' Motion for Partial

Summary Judgment filed May 4, 2010, (Docket Nos. 41-42, 47).  Also before the Court are

defendant Thomas McCracken's Motion to Strike the Second Affidavit of John Lewis, filed

June 18, 2010, (Docket No. 54), and defendant French Lick Resort Casino's Motion for

Entry of Default Judgment on Resort's Trespass Claim filed January 7, 2011,[1] (Docket No.

62).

_____

      [1]The court now DENIES the Motion for Entry of Default Judgment.  In the court's prior order
of August 27, 2010, the court granted Lewis's Motion to Set Aside Default provided that Lewis file
an Answer to the Counterclaim.  Such an Answer was, in fact, filed.  (*See* Docket No. 33).
Therefore, the Entry of Default is moot, and a Default Judgment is unwarranted.

## **Factual Background**

The evidence viewed in a light most favorable to the non-moving parties establishes as follows:

Plaintiff John Lewis ("Lewis") is the pastor of Old Paths Baptist Church, an "unregistered" Baptist church. (Deposition of John Lewis ("Lewis Dep.") at 13-14, 169). Old Paths Baptist Church is located in Campbellsburg, Washington County, Indiana. (Lewis Dep. at 14). Lewis periodically leads members of his church and others in public demonstrations against what they believe to be sinful activity. (Lewis Dep. at 186-187).

On June 5, 2007, Lewis led a group of demonstrators who targeted the French Lick Resort Casino ("Resort") for its involvement in "gambling, sodomy, abortion, weak-kneed Baptists and other various and sundry sins." (Second Affidavit of John Lewis ("Second Lewis Aff.") ¶ 2).[2] The protestors based their actions and their views on their interpretation(s) of the Bible. (Affidavit of John Lewis ("Lewis Aff.") ¶ 14). Lewis and his associates staged their demonstration on a sidewalk located at the entrance to the Casino, more specifically, at the intersection of State Road 56, State Road 145, and the

---

[2]Defendant Thomas McCracken filed a Motion to Strike various portions of the Second Affidavit of John Lewis. Having examined said affidavit, the Court now **GRANTS in part and DENIES in part** the Motion to Strike. At paragraph 3 of the Second Affidavit, Lewis indicates that he has traveled on State Road 56 in the past. Therefore, he has demonstrated personal knowledge about State Road 56, making admissible his statements about his prior use of the state road, the ways in which to properly cross it, and the direction of various landmarks located along side it. However, the portions of Paragraphs 4 and 5 discussing the location of the right-of-way are legal conclusions that must be stricken. The Motion to Strike is thus GRANTED. Paragraphs 6-10 include information about Lewis's personal familiarity with State Road 56; the Motion to Strike those paragraphs is DENIED. Paragraph 13 states a legal conclusion; the Motion to Strike is therefore GRANTED. Paragraphs 18-28 detail facts relating to defendant Bennett's participation in the incident; the Motion to Strike is therefore DENIED. The Motion to Strike is GRANTED with respect to Paragraphs 29 and 30 which contain legal conclusions concerning a traditional public forum based on a comparison of the incident at issue here to that addressed by a Utah Court.

entrance driveway into the Resort in French Lick, Indiana ("the Intersection"). (Complaint at. 2; Lewis Dep. at 70-71; Brief in Support of Motion for Summary Judgment at Exs. 1, 4.1)(State Road 145 terminates at the entrance to the Resort. The driveway/roadway into the Resort intersects with State Road 56 in a manner that could be deemed a continuation of State Road 145). A diagram of the Intersection depicting the details of the subject location is attached to this Order.[3]

The demonstration commenced on the sidewalk located at the southwest corner of the Intersection. (Lewis Dep. at 70-71; Brief in Support of Motion for Summary Judgment at Exs. 1, 4.1). At the time of the demonstration, each corner of the Intersection included an area of sidewalk (Brief in Support of Motion for Summary Judgment at Exs. 1, 4.1) as well as   traffic signals and crosswalks. (*Id*.).

The southwest corner of the Intersection where Lewis et al. were demonstrating was owned by French Lick Real Estate Holdings, LLC (the "Holding Company"). (Affidavit of Christopher Leininger ("Leininger Aff.") ¶ 4). The Holding Company is an affiliated company with the Resort, both being wholly owned by Blue Sky Resorts, LLC. (Leininger Aff. ¶ 3). The Sidewalk and portions of the adjacent land fell within the planned public right of way of State Road 56, but, at the time of the demonstration, the Holding Company

---

[3]The diagram was submitted as an exhibit to the Motions(s). However, it fails to include two salient details as they existed on the day of the demonstration. First, the sidewalk ended on the west side of State Road 56 at the intersection and did not proceed southwest along State Road 56 as shown in the diagram. Second, there were right-of-way markers in place on the day of the demonstration that are not visible on the diagram. The Court has added two X's to denote the areas where the demonstrations gathered, for ease of understanding.



had not yet transferred title to that parcel to the Town of French Lick.[4] (Leininger Aff. ¶ 5). The land owned by the Holding Company contained concrete right-of way markers located on the Resort property, and the Sidewalk where Lewis was staging his protest lay between the right-of-way markers and State Road 56. (Second Lewis Aff. ¶ 11; Brief in Support of Motion for Summary Judgment at Ex. 4.1). Lewis maintains that the State Road 56 right-of-way predated the development of the Resort by many years and that in the past he personally had walked along the northern shoulder of State Road 56 in the area of the Resort prior to the construction of the Resort. (Second Lewis Aff. ¶¶ 5-6). After the Resort was built, he and other pedestrians continued to walk from time to time on the shoulder and grass along State Road 56 in front of the Resort. (*Id*. ¶ 7).

At the time of the demonstration, Defendant Jim Bennett ("Bennett") was employed by Resort as its Director of Security. (Complaint at 1). Also at the time of the demonstration, Defendant McCracken was Chief of Police with the French Lick Police Department. (*Id*. at 2). During the demonstration, McCracken and Bennett informed Lewis that they believed he was impermissably on the Resort's property and requested that he leave the Resort's property or face arrest for trespass. In that regard, they suggested that he could continue his demonstration on the opposite side of the street (*i.e.*, the southeast side of State Road 56). (Lewis Dep. at 54). Lewis informed McCracken that he believed he was conducting his demonstration and exercising his First Amendment rights on a traditional public forum and that, in his view, the sidewalk was the best location for

---

[4]Title to the land within the planned public right of way of State Road 56, including the Sidewalk, was transferred to the Town of French Lick by quitclaim deed on November 16, 2007. (Leininger Aff., ¶ 6; Leininger Aff. at Ex. A)

conveying his message.  In addition, Lewis refused to leave unless threatened with arrest.

(Lewis Aff. ¶ 17).  McCracken informed Lewis that the Resort held title to the sidewalk;

Lewis responded with quotes from Supreme Court decisions regarding demonstrations on

sidewalks, reiterating his view that the sidewalk – indeed, this sidewalk – was a

"quintessential public forum."  (*Id*. ¶ 18-19).  Chief McCracken retreated to confer with

Resort officials, seeking instructions as to what he should do next.  (*Id*. ¶ 20).  Shortly

thereafter, McCracken returned with Bennett to the scene of the demonstration where

Bennett again instructed Lewis to leave.  (Second Lewis Aff. ¶ 26).

Lewis agreed to leave the Sidewalk and to continue the demonstration on the

southeast side of State Road 56, on the sidewalk across the street from the Resort.

("Plaintiff's Answers to Defendant, Thomas McCracken's First Set of Interrogatories to

Plaintiff," answer to Interrogatory No. 13).  There, Lewis resumed the demonstration,

which lasted approximately half an hour.  (*Id.*).

Believing his Constitutional rights to have been violated by Bennett and

McCracken's order to him and his followers to leave the Sidewalk on the southwest corner

of State Road 56, Lewis filed this suit against Defendants, pursuant to 42 U.S.C. §§ 1983

and 1985.  Lewis claims that his having been located on a sidewalk which was a traditional

public forum, and being threatened with arrest if he did not move, the threat of arrest was a

violation of his First Amendment rights.  Lewis has sued McCracken under Section 1983,

alleging that McCracken's threats of arrest amounted to state action occurring under color

of law.  He further contends that Bennett and the Resort are also liable under Section 1983

because they acted in concert with McCracken to deprive Lewis of his Constitutional

entitlements. Finally, Lewis asserts that all three defendants are guilty of conspiracy to violate his rights under Section 1985.

Bennett and the Resort have filed this Motion for Summary Judgment on the following grounds: 1) that the sidewalk was private property owned by the Resort and that, therefore, no violation of Lewis's First Amendment rights occurred when he was ordered to leave; 2) that the portion of the Sidewalk on which the demonstration was staged was not a traditional public forum because it was not a part of the town of French Lick's transportation grid; 3) that, even if a viable cause of action under Section 1983 existed based on their violations of Lewis's First Amendment rights, Defendants are entitled to prevail on a good faith defense; 4) that Lewis's claim, pursuant to Section 1985, is not viable in any event because there has been no showing of religious animus; 5) that Lewis has failed to demonstrate that he suffered any damages as a consequence of his Constitutional deprivations; and 6) that the Resort is entitled to judgment as a matter of law on its trespass counterclaim.

McCracken filed his Motion for Summary Judgment joining defendants' motion and adding the defense of qualified immunity.

Lewis has also filed a Motion for Partial Summary Judgment, claiming: 1) that the sidewalk on which he and his group were demonstrating was a traditional public forum; 2) that McCracken was acting under color of state law; and 3) that Lewis is entitled to judgment as a matter of law on his 1983 claim against McCracken.

The Court, being duly advised, now DENIES in part and GRANTS in part defendants' Motions for Summary Judgment, and GRANTS Lewis's Motion for Partial Summary Judgment.

<u>**Legal Analysis**</u>

## I.    **Standard of Review**

In ruling on a motion for summary judgment, all facts and reasonable inferences must be construed in favor of the non-moving party. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). We do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, we determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 245-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 323. To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).  The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement.  *Anderson*, 477 U.S. at 251-52. The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff.  Id.  If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish its case, summary judgment is not only appropriate, but also required.  *See Celotex*, 477 U.S. at 322.

**II.    Discussion**

A. *Lewis's 1983 Claims*

Lewis has brought his claims against McCracken asserting that McCracken was a public official acting under state law to deprive Lewis of his Constitutional rights, pursuant to 42 U.S.C. § 1983.  He has sued the private defendants under this statute as well.  In analyzing Lewis's 1983 claims, we must first determine whether Chief McCracken violated Lewis's free speech rights under the First Amendment.  If so, we next address whether McCracken is entitled to qualified immunity on this claim.  In addition, we must decide whether the private defendants can be held liable under Section 1983.

1. Section 1983 Claim against Chief McCracken:

Generally, a claim under 42 U.S.C. § 1983 must allege that the conduct complained of occurred at the hands of a person acting under color of state law, and that the challenged conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).  Here, no dispute exists regarding the fact that, as chief of police, McCracken was acting under color of law in ordering Lewis et al. off the sidewalk

which they were occupying in conducting their demonstration.  Furthermore, it is clear that the signs displayed by the protestors and the purpose of their gathering implicated "matters of public concern," as defined by the Supreme Court as recently as its decision in *Snyder v. Phelps*, --- U.S. --- (2011).  It is also well established that "oral and written dissemination . . . [of] religious views and doctrines is protected by the First Amendment."  *Heffron v. Int'l Soc. for Krishna Conciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).  Demonstrations in public places are entitled to receive First Amendment protection as well.  *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).  Thus, Lewis's activity, whether construed as a demonstration or the dissemination of religious view and doctrines, is entitled to First Amendment protections.  If Lewis can establish that McCracken's actions violated these First Amendment rights, he has a viable Section 1983 claim.[5]

Whether Lewis can establish that his First Amendment rights were violated depends in part on whether the sidewalk on which he was demonstrating was a public forum. "Under a Free Speech forum analysis, the forum category defines the level of scrutiny applicable to the challenged government action."  *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 588 F.3d 523, 530 (7th Cir. 2009).  Three distinct categories of forums have been recognized  in terms of conducting this analysis:  a traditional public forum, a designated public forum, and a nonpublic forum.  *Id*.  A traditional public forum is defined as a public

---

[5]We note that Plaintiff was not actually arrested for protesting on the sidewalk in front of the Casino.  He was merely threatened with arrest and, to avoid that consequence, he complied with McCracken's demands by moving his protest across the street.  However, "a realistic threat of arrest is enough to chill First Amendment rights," creating a justiciable controversy. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004).

space such as a street or a park that has long been used and open for expressive activity. The government's exclusion of an individual from a traditional public forum is subject to strict scrutiny, meaning that the exclusion must be narrowly tailored to serve a compelling state interest. *Id*.

Lewis contends that the sidewalk he was forced to abandon was such a traditional public forum, and that McCracken's order directing him to leave that place does not withstand strict scrutiny as there was no compelling state interest in removing him. McCracken and the other defendants rejoin that the sidewalk was privately owned at the time of the incident and that it, therefore, was not a traditional public forum. A review of the relevant case law establishes that Defendants' argument is unavailing.

The Supreme Court has not provided lower courts with an illustrative, not to mention exhaustive, list of areas that qualify as traditional public forums. However, it has indicated that certain areas such as open spaces, meeting halls, parks, street corners, and other public thoroughfares qualify as such. *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 303, 94 S.Ct. 2714, 41 L.Ed.2d 270 (1974). With specific reference to public streets and sidewalks, the Supreme Court, citing a 1939 ruling, held that "'[t]ime out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). No inquiry into the precise nature of a particular street is necessary because "wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and ... for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id*. (*quoting Hague v. CIO*,

307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Consequently, " [a]ll public sidewalks are held in the public trust and are properly considered a traditional public fora." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 536 (7th Cir. 2005). We turn next to the issue of whether Lewis's demonstration occurred on a public sidewalk.

Neither the Supreme Court nor the Seventh Circuit[6] has, so far as we can tell, ever addressed whether a sidewalk located on private property adjacent to a public road qualifies as a traditional public forum for First Amendment Free Speech purposes. However, given the Supreme Court's strongly expressed commitment to protecting a speaker's reasonable expectations that his speech will be protected, we have been provided helpful guidance. In *United States v. Grace*, the Supreme Court struck down a statute prohibiting leafleting and picketing on the sidewalks surrounding the Supreme Court, in part because there was "no separation" and "no indication" that a person had "entered some special type of enclave." *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). The Seventh Circuit applied this same rationale to a park, concluding that the sale of a .15 acre section of the public park to a private organization did not transform that privately-owned section into a non-public forum; the appellate court ruled that the parcel retained its public forum status despite being privately owned. *Freedom from Religion Foundation, Inc. v. City of Marshfield*, 203 F.3d 487 (7th Cir. 2000).

---

[6]Defendants suggest that *Chicago Pier v. Metropolitan Pier & Exposition Authority*, 150 F.3d 695 (7th Cir. 1998) is controlling. However, that case involved sidewalks along Navy Pier in Chicago, that is, sidewalks that were not at the intersection of two public roads. In fact, they were internal sidewalks providing only ingress and egress to the pier. In this case, the sidewalk is actually adjacent to a public road providing pedestrians access to a crosswalk over State Road 56.

Giving priority to the need for government to preserve and protect the reasonable expectations of a speaker, other circuit courts have ruled that privately owned sidewalks bordering public roads qualify as traditional public forums. The Tenth Circuit, for example, in *Venetian Casino Resort, LLC v. Local Joint Exec. Bd. of Las Vegas*, addressed the issue of "whether the sidewalk on private property that requires unobstructed pedestrian traffic is a public forum." *Venetian*, 257 F.3d 937, 943 (10th Cir. 2001). There, the court concluded that such a sidewalk is, in fact, a public forum, reasoning that the sidewalk was a thoroughfare seamlessly connected to public sidewalks on either end and intended for general public use. It also explained that the sidewalk was "the only means for pedestrians to travel north or south along the Venetian's side of the Las Vegas Boulevard, a busy multi-lane traffic artery." *Id*. at 944.

The Sixth Circuit reached a similar conclusion in *United Church of Christ v. Gateway Economic Development Corp. of Greater Cleveland, Inc.*, 383 F.3d 449 (6th Cir. 2004). There the court was asked to decide whether a privately-owned sidewalk that bordered a sports complex where the Cleveland Indians and Cleveland Cavaliers play ball was a traditional public forum. Explaining that the sidewalk looked and felt like a typical public sidewalk that blended into the urban grid and bordered a public road, and became a public thoroughfare, open to the public for general pedestrian passage, Id. at 452, the Sixth Circuit concluded that the otherwise private sidewalk was, in fact, a traditional public forum. *Id*.

Other circuits have adopted this concept of a "thoroughfare," as well. The Fourth Circuit explained that "[t]he typical traditional public forum is property which has the

physical characteristics of a public thoroughfare." *Warren v. Fairfax County*, 196 F.3d 186, 191 (4th Cir. 1999). And the Ninth Circuit noted that "[u]se of a forum as a public thoroughfare is often regarded as a key factor in determining public forum status." *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1101 (9th Cir. 2003). Indiana state courts have also explained that the term, thoroughfare, "must include sidewalks as well as streets and highways." *LaPorte Civic Auditorium v. Ames*, 641 N.E.2d 1045, 1047 (Ind. Ct. App. 1995).

Here, the undisputed facts establish that the sidewalk on which Lewis and his associates were protesting ran adjacent to State Road 56. A crosswalk and traffic signal designated the intersection marking the place for pedestrians to cross State Road 56 and State Road 145. The sidewalk in front of the Resort appears in all respects like the other sidewalk existing on the opposite side of the intersection. The right-of-way markers also denote a public right-of-way. Lewis testified that the area of shoulder along State Road 56 has long been used by pedestrians as a means of traveling along State Road 56 to various parts of French Lick.[7] Thus, we conclude that the sidewalk at issue here qualifies as a traditional public forum.

This conclusion is consonant with the Supreme Court's focus in *Grace,* namely the expectations of the person using the sidewalk to stage his protest. It is also consistent with

---

[7]Indiana courts recognize that a right-of-way can be acquired by use, and that evidence of right-of-way markers as well as evidence that pedestrians have traveled along property adjacent to a road are all indicia of a public right-of-way. *Contel of Indiana, Inc. v. Coulson*, 659 N.E.2d 224, 228 (Ind. Ct. App. 1995).

decisions from the other circuits, as we have explained, in particular those decision from the Fourth, Sixth, Ninth and Tenth Circuits as well as under Indiana law.

Despite our conclusion that the sidewalk at issue here qualifies as a traditional public forum, McCracken can nonetheless escape liability if his directive to Lewis that he move his demonstration across the street withstands strict scrutiny; thus we ask: was the location restriction imposed on Lewis narrowly tailored to meet a compelling government interest? *Clarke*, 588 F.3d at 530. McCracken has made no attempt to demonstrate that a compelling government interest motivated his request to Lewis to move from the sidewalk where he was demonstrating. However, if the decision to force Lewis to move across the street amounted to nothing more than a content-neutral regulation of Lewis's speech constituting a reasonable time, place, or manner regulation, then McCracken is entitled to avoid liability on this basis. Such regulations are permissible, however, only if they "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Again, Defendants have made no effort to demonstrate a "significant government interest" that prompted their directive to Lewis to move his protest demonstration across the street from the Resort. Without such a showing, Lewis has successfully established that he suffered a constitutional violation by Chief McCracken of his First Amendment Free Speech rights.

2. Qualified Immunity

We turn next to the issue of qualified immunity protections, if any, available to Chief McCracken. Qualified immunity shields McCracken from individual liability under

-15-

Section 1983 for actions taken by him in the course of his performance of his discretionary functions, unless his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under controlling qualified immunity case law, before a public official can be found liable, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Seventh Circuit has explained the meaning of a "clearly established" right as follows:

> [A] plaintiff need not always identify a closely analogous case; rather, he can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue. Thus, binding precedent is not necessary to clearly establish a right. In fact, in the most extreme cases, an analogous case might never arise because the existence of the right was so clear, as a matter of the wording of a constitutional or statutory provision or decisions in other circuits or in the state courts, that no one thought it worthwhile to litigate the issue.

*Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000)(internal citations and quotations omitted).

Was Lewis's protest entitled to Constitutional protections based on clearly established rights making a privately owned sidewalk adjacent to a public highway a traditional public forum? Obviously, at the time of Lewis's protest, that First Amendment principle whereby a public sidewalk is deemed a traditional public forum was clearly established. But does the fact that the sidewalk was built on land belonging to a private owner change on analysis or our conclusion? As mentioned above, various circuit courts

have held that privately owned sidewalks can be deemed traditional public forums.  Other circuit courts have ruled that, wherever there is a "thoroughfare," a traditional public forum exists.  While none of these rulings arose from Seventh Circuit caselaw, we are confident that the right to protest on a sidewalk adjacent to a public highway is clear enough not to require a specific decision from the Seventh Circuit before concluding that this was a clearly established right at the time of Lewis's protest.  We repeat the controlling facts here for sake of clarity:  the sidewalk was adjacent to State Road 56; the demonstration occurred at a busy intersection connected to a crosswalk where traffic was controlled by a traffic signal; the sidewalk lay within the right-of-way markers in a space regularly used by pedestrians to traverse the area along side State Road 56.  Thus, in our view, a reasonable officer in Chief McCracken's position should have known that the sidewalk was a traditional public forum   and that persons using it for a public demonstration were entitled to First Amendment protection(s).  Chief McCracken therefore is not immune to liability by action of the doctrine of qualified immunity.

### 3.  No Need to Show Actual Damages

Defendants also contend that Plaintiff's Section 1983 claim fails for lack of evidence to show that Lewis suffered any actual damages.  We need not dwell at length on this issue, however, as "[a] deprivation of First Amendment rights standing alone is a cognizable injury."  *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999).  Though Lewis is not entitled to recover damages based on some  abstract value or unspecified importance associated with this constitutional right, an injury to his First Amendment rights nonetheless may "be compensated through substantial money damages."  *City of Watseka v. Illinois Public*

*Action Council*, 796 F2d. 1547, 1559 (7th Cir. 1986).  Furthermore, in a Section 1983 case,

a jury is entitled to consider whether to award punitive damages to a prevailing plaintiff

upon a showing that the defendants' conduct was motivated by evil intent or callous

indifference to Plaintiff's federally protected rights.  *Marshall v. Teske*, 284 F.3d 765, 772

(7th Cir. 2002).  Lewis's entitlement to punitive damages based on a violation of his First

Amendment rights does not necessarily require proof of any actual, underlying

compensatory injury or damages.  Defendants' argument in favor of summary judgment due

to Plaintiff's failure to establish any damages from his First Amendment deprivation

therefore lacks any merit.

    4.  Liability of the Private Defendants

    Under Section 1983, "[p]rivate persons, jointly engaged with state officials in the

prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under

color' of law does not require that the accused be an officer of the State.  It is enough that

he is a willful participant in joint activity with the State or its agents."  *United States v.

Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)(internal quotations

omitted).  Our analysis here must distinguish between situations where a private citizen is

acting in concert with a government actor and situations where a private citizen has merely

provided information to the government actor.  Simply supplying information to a police

officer who then acts on his own initiative to arrest someone is not enough to establish that

the private citizen's action occurred under color of law.  *Butler v. Goldblatt Bros., Inc.*, 589

F.2d 323, 327 (7th Cir. 1978).  "In order to establish a conspiracy, the plaintiff must

demonstrate that the state officials and the private party somehow reached an understanding

to deny the [plaintiff his] Constitutional rights." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985).

The evidence in this case viewed in a light most favorable to Lewis, according to Bennett, shows that Bennett contacted the police to request that Lewis be removed from the sidewalk in front of the casino. However, according to Lewis, Bennett also threatened to have him arrested. Thus, Bennett might be found to have acted under color of law in concert with McCracken, giving rise to personal liability under Section 1983. Therefore, Bennett is not entitled to summary judgment on this basis.

One final issue remains: is Bennett entitled to some form of qualified or other immunity for his actions? Though private citizens faced with a liability for a violation of Section 1983 are not entitled to qualified immunity, (*Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)), the Supreme Court has left open the issue of whether such a private citizen is entitled to assert an affirmative defense of good faith. *Id*. at 169 ("we do not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith or probable cause."). Again, our review of the relevant legal authorities reveals no Seventh Circuit cases allowing a good faith defense under these circumstances, and other circuits are split on the question of whether such a defense is available to a private citizen in a Section 1983 case. *See Downs v. Sawtelle*, 574 F.2d 1, 16 (1st Cir. 1978); *Howerton v. Gabica*, 708 F.2d 380, 385 n.10 (9th Cir. 1983)("there is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights.") ; *but see Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276-77 (3rd Cir.

1994)(finding good faith defense existed for private individuals).  Because the Supreme

Court has not foreclosed the possibility of a good faith defense for private individuals in a

Section 1983 action, we conclude that such a defense is available here to Bennett.

Nonetheless, we concede that no small amount of confusion exists regarding the precise

elements of a good faith defense.  Some courts have determined that the only showing

necessary is a subjective belief that one's actions did not violate the Constitution.  *See e.g.*

*Jordan,* 20 F.3d at 1277.  Other cases–ones which we find to be more persuasive--hold that,

in order for a private individual to show good faith in a Section 1983 case, he must

demonstrate that he had a subjective belief that his actions were constitutional and that that

belief on his part was objectively reasonable.  *Palmer v. Garuti*, 2009 WL 413129 at *7 (D.

Conn. 2009); *Trujillo v. City of Ontario*, 428 F.Supp.2d 1094, 1116 n.17 (C.D. Cal. 2006)

(explaining that a good faith defense with only a subjective component would allow an

"ignorance of the law" defense which is disfavored.).

     Bennett's good faith defense thus involves both a subjective and objective

component.  Accordingly, it is clear that he has failed to demonstrate at this early stage of

the proceedings that he was, as a matter of fact and law, acting in good faith.  Because the

curtailment of Lewis's constitutional entitlements was not objectively reasonable, Bennett's

and the Resort's Motion for Summary Judgment must be DENIED.

     *B. Lewis's 1985 Claims*

     Lewis's final claim for relief is that Defendants' actions amounted to a conspiracy

under 42 U.S.C. § 1985(3).  In order to demonstrate a civil conspiracy under Section

1985(3), Lewis must show: (1) the existence of a conspiracy; (2) a purpose of depriving a

person or class of persons of equal protection of the law; (3) an act in furtherance of a conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999). Under Section 1985, Lewis must show "some racial or perhaps otherwise class-based invidiously discriminatory animus" spawning defendants' actions, and that the conspiracy was directed at interfering with rights that are constitutionally protected against both private and official encroachment. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Class-based invidiously discriminatory animus has been interpreted to include animus based on a person's sex, religion, ethnicity, or political loyalty. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000).

A careful review of the record before us discloses no evidence of any animus on the part of any defendant against Lewis based on Lewis's sex, race, ethnicity, or political loyalty. Thus, the only other possible basis on which Lewis might be able to establish all of the elements of a cause of action under Section 1985(3) based on invidiously discriminatory animus is his religion. Consistent with our earlier discussion of Section 1983, three of the elements of the Section 1985(3) claim (the existence of a conspiracy, an act in furtherance of that conspiracy, and a deprivation of Lewis' First Amendment rights) have been established sufficiently for Lewis's claim of conspiracy to survive summary judgment. However, even when taken in a light most favorable to Lewis, there is no basis from which a reasonable inference could be drawn to establish that defendants acted out of an animus toward Lewis's religion in curtailing his Constitutionally protected rights. Similarly, there is no evidence to substantiate a claim that defendants acted out of an

animus towards The Old Paths Baptist Church or towards Christianity or towards Lewis's religious interpretations, in general. Even if the evidence sufficed to show that defendants were acting out of an animus towards Lewis's anti-homosexual, anti-gambling, anti-abortion message, those messages are not *per se* religious messages. To prevail on his Section 1985 claim, Lewis must be able to show the existence of an actual animus on the part of Defendant(s) toward his religion, not simply an animus towards a particular message that could be attributed to any one of many other possible sources.

Having failed to adduce evidence sufficient to support this element of his Section 1985 claim, it cannot survive. Defendants' Motion for Summary Judgment on Lewis's Section 1985 claim is therefore GRANTED.

## Conclusion

As outlined above, Defendants J. Michael Bennett and French Lick Resorts & Casino, LLC's Motion for Summary Judgment (Docket No. 38) in which McCracken joined is GRANTED in part and DENIED in part. Defendant Thomas McCracken's Summary Judgment Motion (Docket No. 40) on the Section 1983 claim is DENIED on his additional claim of entitlement to qualified immunity. Plaintiff John Lewis's claims based on 42 U.S.C. § 1983 survive the Defendants' Motions for Summary Judgment and remain for trial, but his claim based on 42 U.S.C. § 1985 is DISMISSED. Plaintiff's Motion for Partial Summary Judgment (Docket No. 41) is GRANTED on his Section 1983 claim against McCracken, based on the violation of Lewis's First Amendment rights, and judgment shall enter accordingly as to liability, but the extent of Lewis' damages, if any, remains for determination by a jury. Finally, McCracken's Motion to Strike the Second

Affidavit of John Lewis (Docket No. 54) is GRANTED in part and DENIED in part, and the Resort's Motion for Entry of Default Judgment on Resort's Trespass Claim (Docket No. 62) is DENIED.

**SO ORDERED.**

**Dated:**   03/18/2011

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Electronic copies to:**

Dale William Arnett
ATTORNEY AT LAW
larnett1@frontier.com

Douglas Alan Hoffman
CARSON BOXBERGER
hoffman@carsonboxberger.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

Geoffrey G. Slaughter
TAFT STETTINIUS & HOLLISTER LLP
gslaughter@taftlaw.com